[No. 1038. Decided December 21, 1893.]

WILLIAM B. HANNA AND MOLLIE HANNA, *Respondents*, v. GEORGE M. SAVAGE, WALTER J. THOMPSON AND HENRY DRUM, *Appellants*.

PLEADING — SUFFICIENCY OF COMPLAINT — ANSWER — JUDGMENT ON
PLEADINGS — GUARANTY.

In an action against three defendants to recover the purchase price of land, a complaint alleging that the deed therefor was executed to one defendant at the request of the other two, who were the real purchasers; that the grantee named in the deed executed a note secured by mortgage on the land for the deferred payment, and that the other two defendants, at the same time and as part of the same transaction, executed a bond or guaranty for the payment of said sum, states a cause of action against all the defendants.

A bond to secure the payment of money, which, after reciting the debt, states that "the undersigned agree to be bounden . . . for the full sum . . . as specified in said note and mortgage," if the maker of the note shall fail to pay the same, is an absolute obligation for the payment, and not a conditional guaranty.

In an action for the purchase price of land conveyed to defendants, in which there is no denial of the allegation of the complaint

that defendants were in possession at the time of the commencement of the action, nor a denial of any other material allegation of the complaint, the plaintiffs are entitled to judgment on the pleadings.

(STILES, J., dissents.)

*Appeal from Superior Court, Thurston County.*

Action by William B. Hanna and wife against George M. Savage, Walter J. Thompson and Henry Drum, to recover the sum of $17,141, with interest. The complaint alleged that defendants Thompson and Drum proposed to purchase certain lands of plaintiffs for the sum of $18,141, one thousand cash and the balance in two years, and an additional sum of $5,000, in the event of a standard guage railroad being built into Olympia in the vicinity of the land within two years from date of contract; that said defendants represented that they were bankers and did not desire to appear as land speculators, and wished to have the deed to the land made in the name of George M. Savage, but that said defendants Thompson and Drum would pay the contract price; that in pursuance of such agreement plaintiffs executed a deed to said land to George M. Savage, who gave his promissory note for $17,141 to plaintiffs, secured by mortgage upon said lands; that defendants Thompson and Drum paid $1,000 cash, and executed to plaintiffs a bond, or instrument of guaranty, in the following terms, viz.:

"OLYMPIA, WASHINGTON, April 18, 1890.

"Whereas, George M. Savage has purchased of William B. Hanna and Mollie Hanna certain property, and has given to them his note and mortgage for the sum of seventeen thousand one hundred and forty-one dollars ($17,141), and whereas, said William B. Hanna desires additional security for payment of said sum of $17,141.

"Now, then, the undersigned agree to be bounden unto said William B. Hanna and Mollie Hanna for the full sum of $17,141, with interest as specified in said note and mort-

gage, if said Savage shall fail to pay the same, and as further and additional security the undersigned hereby assign to said William B. Hanna and Mollie Hanna, for the purpose of collateral security herein, five hundred (500) shares of stock of the North Olympia Land Company, of the par value of fifty thousand dollars ($50,000), the certificates whereof are hereto attached.

WALTER J. THOMPSON.
HENRY DRUM.
GEORGE M. SAVAGE."

That all of the papers above set forth were made, executed and delivered at the same time and in the same place, and as part and parcel of the same transaction, except the certificates of stock, which were forwarded from Tacoma some days afterward; that defendants are in the quiet, peaceable and undisturbed possession of said lands, and exercising dominion over the same as owners thereof; that said sum of $17,141, with interest thereon from October 18, 1891, is now due and payable, and that plaintiffs are able and willing to deliver up for cancellation said note and mortgage and all other papers hereinbefore mentioned as held by them against the defendants, and fully discharge defendants from any obligations entered into with reference to said lands, upon payment of the purchase price of said lands and the costs of this action, for which sums they pray judgment.

The demurrer of defendants Thompson and Drum to the foregoing complaint was overruled, and subsequently, defendants having answered, plaintiffs moved for judgment on the pleadings, which was granted upon the grounds that no material allegation of the complaint was denied, and that the answers of the defendants did not state any new matter constituting a defense.   The defendants appeal.

*Doolittle & Fogg,* and *Charles O. Bates,* for appellants.
*Allen & Moore,* for respondents.

The opinion of the court was delivered by

DUNBAR, C. J.— Appellant's first contention is, that the court erred in overruling the demurrer of Thompson and Drum to the complaint. We think the complaint states a cause of action against all of the defendants. There is possibly more stated in the complaint than was necessary to state in an action at law, but it is plain that the object in the particularity of statement and recitation of the different instruments in writing was to present a state of facts showing the relation of Savage, Thompson and Drum to the plaintiffs, a condition which, if true, would make each of the defendants principals in the purchase alleged, and equally bound. Neither do we think there is any oral statement tending to dispute the written agreement. The statements are simply supplementary. The parties had a right to make the contract alleged in the complaint to have been made, and to make any arrangement of convenience which they saw fit, and there is nothing contradictory between the written obligation and the allegations of the complaint. The allegations simply explain the reasons for the form of the contract.

Much has been said in the briefs, and many cases cited showing the respective liabilities of guarantors and insurers, but we have been unable to obtain any light from such citations, for even conceding that Thompson and Drum are guarantors, under all the authorities they are absolute guarantors, and are absolutely bound. The bond which they all signed and executed was, after reciting the debt, as follows:

"Now, then, the undersigned agree to be bounden unto said William B. Hanna and Mollie Hanna for the full sum of $17,141.00, with interest as specified in said note and mortgage, if said Savage shall fail to pay the same," etc.

Here is an absolute obligation for the payment if Sav-

age fails to pay; not a guaranty that the money can be made out of Savage by due diligence, but a plain obligation that they will pay it if Savage does not. This distinction is made clear by Randolph on Commercial Paper, § 850:

"A guaranty," says the author, "may be *absolute*, that is, for the payment of the bill or note; or *conditional*, that is, a guaranty that it is collectible by due diligence. One who guarantees payment becomes absolutely liable on any default of payment by his principal."

And Daniel on Negotiable Instruments, § 1769, states the rule thus:

"If A guarantees, expressly or by implication, to pay the note of B to C, provided B does not pay it, he becomes absolutely liable for its payment immediately upon B's default, and is, therefore, deemed an absolute guarantor of the due payment of the note by B to C. But if A guarantees the collectibility or goodness of B's note to C, he does not absolutely guarantee its payment, but only that he will pay it in the event that C shall test the collectibility or goodness of the note by regular prosecution of suit against B, and shall be unable, by due and reasonable diligence, to enforce its payment. And, accordingly, he is only deemed a conditional guarantor of payment."

But in this case the complaint plainly shows that this instrument was entered into as a joint and concurrent contract. The several instruments were all of the same date. The whole contract took effect at one and the same time, as different parts of one entire transaction; consequently the principals and sureties are to be deemed joint contractors, and joint makers of the note. Story on Promissory Notes, § 467.

Appellants also complain of the lower court in granting the motion for judgment on the pleadings. We think this contention is equally untenable. The complaint alleges that appellants were in possession at the time the action

was commenced. This allegation is not really denied. They not only do not deny their possession at the time of the commencement of the action, but they expressly allege that they offered to rescind in a reasonable time, and to re-convey, and that the respondents unjustly refused, and still refuse, to comply with the demands of the defendants in every particular.

Construing all the allegations of the answer together, there is, in our judgment, no denial of the material allega-tions of the complaint, and the judgment will, therefore, be affirmed.

SCOTT, STILES, ANDERS and HOYT, JJ., concur.

ON PETITION FOR RE-HEARING.

A petition for re-hearing herein having been denied by the court, the following dissenting opinion was filed by STILES, J.:

STILES, J. (*dissenting*).— Upon reconsideration of this case, on the petition for re-hearing, I find myself unable to sustain the decision heretofore rendered. In the first place the court below, through the judge sitting at the time, over-ruled a demurrer to the answer; but on the day the cause was called for trial, another judge, without any motion to vacate the order overruling the demurrer, entertained the motion for judgment on the pleadings and granted it *in-stanter*.

This I cannot but regard as an irregular and unwarrant-able practice. The order overruling the demurrer was a judgment of the court, upon which the answering parties had a right to rely that they would have a trial upon the merits, until it was set aside in some regular way. Had the order been set aside and the question upon the de-murrer been re-argued, then, if the demurrer were sustained, the parties would have had a right to amend if they could, and might have cured the defects found. But the motion

for judgment was permitted and sustained, and the power to amend cut off in the face of the former undisturbed judgment, as though it never existed. This is neither good nor seemly practice.

Secondly, I think the answer was good both as a defense and a counter claim, although the facts were not in form designated as a counter claim. Affirmative relief, viz., the rescission of the contract, the cancellation of the notes and mortgage and the reconveyance of the land, was demanded, and facts sufficient therefor were stated.

The complaint set out the deed containing a covenant that the grantors were the owners in fee of the premises, free of all incumbrances. The answer alleged that the grantors represented that they had perfect title to the premises, and knew that without such title the guarantors would not have become responsible upon the notes; that the grantors never had title to an undivided three-fourths of the premises, but that the same was vested in other persons named, and that to certain described portions of the premises they had no title at all. No actual possession of any of the land was taken, but, nevertheless, as soon as the state of the title was ascertained, a demand was made upon the grantors for a rescission ·of the entire contract, and a deed of reconveyance was tendered. Upon such facts, which I have very briefly summarized, I think a clear case for rescission was made out, which was enforcible as a counter claim in the suit on the notes.

I know it is the general rule that a purchaser of real property under a deed of general warranty cannot defend a suit for purchase money by showing a merely defective title. But this was not a deed of merely general warranty, for the grantors covenanted that they were the "*owners in fee.*" Covenants of quiet possession, warranty of title, and the like, are not equivalent to this. Such covenants are not broken until ouster; but the covenant of ownership is

broken instantly, if ownership in fee does not in fact exist, for it is equivalent to a covenant of seizin and good right to convey. Rawle on Covenants, § 58; Devlin on Deeds, §§ 887–8.

But these matters of defense have nothing to do with the question of rescission, which lies in every case where, by misrepresentation, a party has succeeded in inducing another to accept in fulfillment of a contract that which is materially different in quantity, quality or title from what the representation led him to suppose it to be. This right of rescission continues although the contract be an executed one, Warvelle on Vendors, p. 836, § 7; and it is a remedy for defective title to real property. *Id.*, p. 843, § 10.