LONDON & SAN FRANCISCO BANK, Limited, v. DEXTER HORTON & CO., Bankers, et al.

(Circuit Court of Appeals, Ninth Circuit.   October 19, 1903.)

No. 831.

1. JUDGMENTS—PERSONS CONCLUDED—EFFECT OF LIS PENDENS.

A judgment foreclosing a mortgage is effective as against one claiming title as a subsequent purchaser, although no lis pendens was filed, as required by the Washington statute (Ballinger's Ann. Codes & St. § 4887), to give notice of the pendency of the suit, such statute having no application after judgment, which binds all parties subsequently dealing with the property affected thereby.

2. SAME—DECREE OF FORECLOSURE—EXECUTION PURCHASER.

A judgment creditor who purchases property at a sale under his own judgment acquires only the interest of the debtor, and takes subject to a previous judgment of foreclosure against the property which was binding on the debtor.

3. SAME—ATTACHING CREDITOR.

An attachment of land which is subject to a recorded mortgage, in an action against the mortgagor, creates a lien only on the equity of redemption, and the only effect of the failure of the mortgagee to make the attaching creditor a party to a subsequent foreclosure suit, or to charge him with notice by the filing of a lis pendens, in case the suit was previously instituted, is to leave him with the right of redemption in case he obtains judgment after the decree of foreclosure has been entered.

4. LACHES—ESSENTIALS OF BAR—PREJUDICE OF OPPOSING PARTY.

To sustain the defense of laches, there must not only have been unnecessary delay on the part of the plaintiff in bringing or prosecuting his action, but also some change in the condition or relations of the property or parties occurring during the period of delay which would make it inequitable to permit the claim of the plaintiff to be enforced.

5. MORTGAGES—SUIT TO FORECLOSE—DEFENSE OF LACHES.

A mortgagee does not lose the right to enforce the mortgage by laches because of delay in prosecuting a suit to foreclose, where the entire delay chargeable to the parties did not exceed six years, and it appeared to have been attributable as much to the defendants as to the plaintiff, and where the party invoking the defense acquired no right in the property until afterward.

6. SAME—LIMITATION.

The right to foreclose a mortgage is not barred by limitation so long as the debt secured remains enforceable.

7. SAME—EFFECT OF STATE STATUTE—PENDENCY OF SEPARATE ACTION ON NOTES.

The law of California that separate actions cannot be maintained at the same time on a note and a mortgage securing the same has no application to a suit to foreclose the mortgage in another state where the property is situated.

8. EQUITY PLEADING—PRAYER FOR GENERAL RELIEF.

In an action by a mortgagee, who has purchased the property at foreclosure sale, to cut off the right of redemption of a defendant who was not a party to the foreclosure suit, but is alleged to be in privity with a defendant therein, and bound by the decree, the court may properly decree a general foreclosure and a resale of the property under a prayer for general relief, where the evidence warrants such a decree.

Gilbert, Circuit Judge, dissenting.

¶ 4. See Equity, vol. 19, Cent. Dig. §§ 206, 213.

126 F.—38

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

This suit was brought in the United States Circuit Court for the District of Washington on March 15, 1897, by the appellant, a British corporation, against Dexter Horton & Co., Bankers, a corporation organized under the laws of the state of Washington, and other lienholders, for a foreclosure of all of the appellees' right, title, lien, and equity of redemption in and to certain lands in the state of Washington. An amended bill of complaint was filed August 1, 1898. The only defendant appearing to contest the complainant's alleged right was the corporation Dexter Horton & Co., Bankers. The court below, upon hearing on the merits, made its decree in favor of the appellee. From this decree the appellant brings the case to this court.

The evidence is largely documentary, involving proceedings in four distinct actions. On September 15, 1877, the Meigs Lumber & Shipbuilding Company, a California corporation, executed to D. A. McKinley and J. McKinley, citizens of California, its note for $30,802.25, and on January 11, 1878, a second note in the sum of $6,000, both of which notes were transferred to the appellant, then engaged in the business of banking in San Francisco. The appellant, on February 8, 1878, before the maturity of either of said notes, granted said Meigs Lumber & Shipbuilding Company an extension of time thereon, in consideration of which said company made to one Arthur Scrivener, as trustee for appellant, a mortgage upon the lands in suit, consisting of about 7,167 acres of timber lands, lying in Kitsap and Mason counties, in the state (then territory) of Washington. This mortgage was duly acknowledged and certified, under the laws of the then territory of Washington, after its execution, so as to entitle it to be recorded, and was duly recorded in the office of the auditor of said Kitsap county, territory of Washington, on February 21, 1878, in the records of said county. On February 6, 1880, the Meigs Lumber & Shipbuilding Company conveyed to William P. Sayward the lands in suit. The notes remaining unpaid, the appellant and Scrivener, trustee, brought suit to foreclose the mortgage on December 15, 1880, in the territorial court, against the Meigs Lumber & Shipbuilding Company, W. P. Sayward, Dexter Horton and Arthur A. Denny, partners doing business under the firm name of Dexter Horton & Co., and others, which suit was, however, dismissed on November 21, 1881, without prejudice to the complainants therein by reason of the complainant corporation having failed to file a certified copy of its articles and an appointment of an agent with the Territorial Secretary, as required by the laws of the territory.

A second suit to foreclose the mortgage was instituted on January 16, 1882, by Scrivener, trustee, in the District Court of the Territory of Washington, Third Judicial District, having jurisdiction of suits in respect to lands in Kitsap county, against the Meigs Lumber & Shipbuilding Company, W. P. Sayward, Dexter Horton and Arthur A. Denny, partners doing business under the firm name of Dexter Horton & Co., and a number of subsequent lienholders. The defendant company therein was personally served with process on the day following the commencement of the suit. Dexter Horton & Co., partners, entered their voluntary appearance January 17, 1882, and W. P. Sayward was served by publication beginning January 20, 1882. The Meigs Company entered a general demurrer to the complaint on April 6, 1885, no earlier interlocutory proceedings being shown by the record. Separate answers to the bill were filed by the Meigs Company and W. P. Sayward on October 4, 1888, and on the 12th of the same month the complainant therein filed separate motions to strike out parts of the answers of said defendants. These motions to strike out parts of the answers remained undisposed of until November, 1889, at which time the territory of Washington was admitted into the Union as a state, whereupon, pursuant to its enabling act, complainant filed a request for the transfer of the cause to the United States Circuit Court for the District of Washington. There was a delay in the appointment of a federal judge for the new district, and it was not until January 13, 1891, that the complainant filed in the federal court a motion for leave to withdraw his pending motions to strike out parts of the answers of the defendants named and permitting him to except thereto,

on which day the federal court ordered the cause to be docketed in that court, and gave a separate order requiring defendants to show cause why the motion should not be granted. On the return day of said order the federal court made an order that the parties replead throughout, denying complainant's motion; but, upon further consideration, the court of its own motion remanded the cause to the superior court of King county, Wash., on April 8, 1891, and the record was certified back to that court on December 2, 1891. The next step in the proceedings appearing in the record is a motion for change of venue from King county to Kitsap county, on November 22, 1893, by reason of the latter having been given a judicial organization separate from the former, which motion, after contest by the defendants therein, was denied December 9, 1893.

On January 8, 1894, a supplemental bill was filed, pleading two judgments against the defendant Meigs Lumber & Shipbuilding Company, which had been obtained by suits in the state court in California upon the notes which furnished the consideration for the mortgage upon the lands in suit. The first of these suits was begun by appellant on February 6, 1882, a short time after the institution of the action to foreclose the mortgage by Scrivener, upon which suit judgment was given for the bank on November 10, 1883. The debt evidenced by this judgment was kept alive by a suit by Scrivener (to whom the first judgment mentioned had been assigned), brought on September 7, 1888, upon which suit Scrivener recovered the second of the two judgments pleaded.

During the year following the filing of the supplemental bill, answers to the bill and supplemental bill, and replications thereto, were filed, and the cause was finally at issue on April 17, 1895. A trial was had, and on February 17, 1896, judgment was rendered in favor of Scrivener for a total amount of $123,049.15, and decreeing the foreclosure of the mortgage on the lands in suit. The mortgaged lands were sold at sheriff's sale on August 12, 1896, to Scrivener, and certificates of sale issued accordingly, and the report of sale confirmed by the court. The statutory period of redemption had not elapsed at the time of the bringing of the suit at bar, and a sheriff's deed has not as yet been issued. Pending these proceedings under the decree of foreclosure, Scrivener had assigned to the appellant bank the notes upon which the suit was brought in the state court of California, the judgments obtained therein (together with a third judgment obtained upon suit brought upon the second of said judgments, which third judgment had been entered on March 12, 1894), and the mortgage on which the foreclosure suit was based, as well as the decree rendered in the same and his interest in the mortgaged premises. No execution was ever issued upon the judgments obtained in California, and no payments appear to have been made in satisfaction of any part of the indebtedness for which these judgments were entered.

It is out of the foreclosure suit and the facts above set forth that the appellant claims to derive, by assignment, its title to the lands in suit. The appellee, Dexter Horton & Co., Bankers, a corporation, on the other hand, sets up title to the lands in question through an execution sale, under a lien of attachment, in a suit brought by it in the federal court in Washington on January 6, 1892, against W. P. Sayward, the grantee, as before stated, of the Meigs Lumber & Shipbuilding Company, the original mortgagor of the lands in question to appellant's assignors. The basis of this suit was certain assigned claims against W. P. Sayward, and the attachment covered all of the lands here in suit. Judgment was recovered in that suit July 23, 1894. This judgment was subsequently affirmed, upon appeal, by this court, and the lands were thereupon levied upon and sold thereunder on June 26, 1896, and a marshal's deed issued to the appellee as purchaser on December 7, 1898, based upon that sale.

It is alleged in the bill of complaint in the present action that at the time when said suit to foreclose said mortgage was brought, and for many years thereafter, it was credibly believed and supposed by the complainant and its trustee, and said trustee's attorneys and counsel, that a due notice of pendency in said action for foreclosure, according to the then statute of said territory, had been properly filed and recorded, and remained of record in the records of said Kitsap county, and said attorneys and counsel still believed that such was the fact, and that they could make due proof thereof,

until after said judgment was entered; and if such were the case, and such notice of pendency of said action could have been proved, all subsequent lienors, by judgment or otherwise, and all persons acquiring any subsequent title or interest in said mortgaged premises, although not named as defendants·in said former action, would have been duly bound by said judgment, and barred and foreclosed of all right and interest in said premises, except the usual right of redemption for one year after sale, by said sale; that complainant has since then ascertained, upon careful search and inquiry, that either no such notice was filed and recorded as it had supposed, or that, by reason of loss or destruction .of the records of said Kitsap county, it is impossible to prove that fact; that in consequence thereof all of the defendants named, each of whom has acquired by judgment, deed, or otherwise, since said mortgage was recorded, and before the entry of said judgment, some apparent lien, interest, right, or title upon or in said mortgaged premises, or some part thereof, still appear of record not to have been bound by said judgment or foreclosed by said sale, and still appear to have some such lien, interest, right, or title, and therefore their said apparent rights under the judgments and deeds which they have acquired constitute clouds upon the title of complainant and impair its rights, and render said judgment and said sale ineffectual to vest in complainant the title in fee to said premises, subject only to the statutory right of redemption, which title it otherwise would have; that each of said defendants, for his or her or its several and respective interests, pretends that said judgment and sale are ineffectual, and a new judgment of foreclosure and a new sale must be had, in order to duly foreclose said mortgage, and they or some of them pretend that said mortgage was invalid by reason of the failure of complainant to file a copy of its charter in the office of the Secretary of State of said territory before the mortgage was made, and that its rights in that behalf, in a certain former suit brought before the suit above stated, have been duly and finally adjudged against complainant, and that the lien of said mortgage and complainant's rights therein have been discharged by the merger of said notes in sundry judgments in the courts of California against said Meigs Lumber & Shipbuilding Co., and that said notes were without consideration and were fraudulent, and their transfer to complainant was fraudulent or was never made in fact, and that complainant had parted with all rights in said notes and mortgage before said suit was brought to trial, together with sundry other false pretenses, all of which complainant avers were and are contrary to the facts, and were duly adjudged in complainant's favor in and by said judgment, after the same had been pleaded by said mortgagor and by said Sayward, the grantee in said former suit, and had been fully and duly tried against said mortgagor and its grantee, under whom all of the defendants herein must claim and do claim, and with whom all of said defendants were and are privy in respect of said judgment and of the mortgaged premises; that complainant is advised by its counsel and verily believes, in consequence of said facts and of the adjudication upon all said pretended defenses above stated in and by said judgment, which still remains of record unreversed and unappealed from (an appeal to the Supreme Court of said state having been taken, and thereafter dismissed and adjudged to be void and ineffectual to confer jurisdiction upon said appellate court), and which still remains wholly unpaid by any of the defendants in said former action or in this suit, except so far as the same has been paid in part by the sale of said lands, all of the defendants are debarred and forever estopped by said judgment to set up any of said defenses or any other defense, but they are all entitled to their day in court for the purpose of having the court determine a time within which they may redeem said mortgaged premises from said sale, either as an entirety or in parcels, upon such showing of their several and respective rights as they may make. It is further alleged that the defendant Dexter Horton & Co., Bankers, claims title in fee to the whole of the premises here in suit by virtue of a deed of the United States marshal made in pursuance of a sale upon execution issued out of the Circuit Court as a court of common law in a certain action brought by said defendant Dexter Horton & Co., Bankers, as plaintiff, against said William P. Sayward, as defendant, and wherein his title and interest in said lands and other lands had been attached, and under said final process of execution was sold and

deeded by said marshal to said Dexter Horton & Co., Bankers, as purchaser at said sale; that said Dexter Horton & Co., Bankers, claim such title in fee to be free of the lien of the complainant's said mortgage and foreclosure judgment and sale, by reason of the several pretenses and alleged defenses mentioned, and is the principal defendant in the case, and the only defendant having any apparent or pretended interest in the whole of the premises in suit, and the interests of all the other defendants are small or partial, and are subsidiary as well to that of said Dexter Horton & Co., Bankers, as to the title of the complainant, and that said William P. Sayward was the grantee in fee of said premises from said mortgagor Meigs Lumber & Shipbuilding Company in or about the year 1878, and by said deed of conveyance pretended to acquire said title free of the lien of said mortgage; that said Sayward remained such owner in fee of said premises at all times thereafter until the same was taken from him by due process of the Circuit Court, and vested in the defendant Dexter Horton & Co., Bankers, as alleged.

It is further alleged that the corporation of Dexter Horton & Co., Bankers (which commenced business June 1, 1886), is the successor by assignment of the former partnership of Dexter Horton and Arthur A. Denny, copartners as Dexter Horton & Co., who were made defendants in the former action. This allegation of the bill of complaint is denied in the answer of Dexter Horton & Co., Bankers, and certain transactions are set forth which resulted, as alleged, in the judgment obtained by it against W. P. Sayward.

The relief prayed for in the bill is that "it may be decreed upon due proofs taken that said judgment in said former suit of Arthur Scrivener v. said Meigs Lumber & Shipbuilding Company and others is binding upon all of the defendants so far as any of the defenses therein pleaded, or any other defenses which might have been pleaded thereto by any of the defendants therein, are concerned, and that each of the defendants is estopped thereby, being privy to the mortgagor and grantee of said lands, who were defendants in said suit and judgment; and that the rights and interests of all the defendants, if any they have, are subject and subordinate to said mortgage and judgment, and that they and each of them, according to their several and respective liens, interests, rights, and titles upon or in the whole of said mortgaged premises, or any several parts thereof, have no rights therein as against your orator, except the right of redemption of the whole premises, or such several parts thereof as they may be interested in from said judgment 'and sale, at such time and on such terms as shall be decreed by the court to be just; and that a certain short date may be named before which they and each of them, according to their several and respective rights and interests, may be required to pay the amount of said judgment, or the amount which the court, according to their several equities, may determine that any defendant or defendants, apart from the rest, is equitably entitled to pay for any several parcel or parcels, and after which date they shall be finally and forever barred and strictly foreclosed of all right, title, lien, and equity of redemption, and your orator's title may become perfect in fee as against each of the defendants failing to redeem as aforesaid." Also that complainant may have such other or further relief as the equity of the case may require, and as to the court may seem meet.

It appears from the evidence in support of the bill that in the second foreclosure suit of January 16, 1882, no lis pendens appeared of record until November 22, 1894, in Kitsap county, and April 15, 1898, in Mason county, though the appellant's testimony discloses the fact that it had always been supposed by the solicitors for Scrivener that a lis pendens had been filed at the commencement of the action by the member of the firm having the matter in charge, and who was dead when it was discovered that the record did not show such a notice. The appellee alleges that it did not have any knowledge of this mortgage, or the commencement or pendency of the foreclosure suit, until after the fixing of the supersedeas bond on the writ of error to the United States Circuit Court of Appeals in the suit of Dexter Horton & Co., Bankers, against W. P. Sayward. This supersedeas bond was dated September 26, 1894. The appellant paid the taxes upon the property described in the bill of complaint for the years 1897, 1898, and 1899, amounting to $8,667.18.

Upon the filing of the memorandum of decision by the court below, from which it appeared that one of the grounds for such decision was that the appellant was not entitled to a strict foreclosure as against the appellees, appellant moved for leave to amend the prayer of its second amended bill by inserting therein a clause in the alternative, praying that, if it were held that appellant was not entitled to a strict foreclosure, it might have a general foreclosure decree as against the appellees. This motion was denied by the court, and upon the same day a decree was filed in favor of Dexter Horton & Co., Bankers, the contesting appellee. In this decree it was adjudged that the appellant had no right to a strict foreclosure or lien upon, or title to, the premises described in the second amended bill of complaint by virtue of the mortgage therein mentioned, and that all liens upon or title to said lands by it formerly had, under or by virtue of the mortgage, had become extinguished by lapse of time under the statutes of the state of Washington, and also by nonprosecution of the former suit to foreclose said mortgage as against Dexter Horton & Co., Bankers, the principal defendant in the case, and all persons claiming under it; and that by reason of said matters the case be dismissed, except for the purposes of an equitable lien upon the lands in appellant's favor for the amounts which it had paid in discharge of all taxes accrued upon the lands, with interest at 7 per cent. per annum from the dates of the several payments, which payments and interest, it was adjudged, amounted to the sum of $11,015.47.

Charles E. Shepard, Thomas R. Shepard, and Burke, Shepard & McGilvra (M. M. Lyter, of counsel), for appellant.

E. F. Blaine, for appellee Dexter Horton & Co., Bankers.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court.

The appellee acquired its title to the land in controversy during the pendency of the foreclosure suit, but it claims that it is not bound by the judgment in that suit, because it was not made a party to it, and was not made subject to it by lis pendens. The law of the state of Washington relating to lis pendens, applicable to this case, is as follows:

"In an action affecting the title to real property the plaintiff, at the time of filing the complaint, or at any time afterwards, or whenever a writ of attachment of property shall be issued, or at any time afterwards, the plaintiff or a defendant when he sets up an affirmative cause of action in his answer and demands substantive relief at the time of filing his answer, or at any time afterwards, if the same be intended to affect real property, may file with the auditor of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property in that county affected thereby. From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action." Section 4887, Ballinger's Ann. Codes & St. Wash.

The appellants supposed that a lis pendens was filed at the time of the commencement of the foreclosure suit, but it was only able to show the fact that a lis pendens was filed at a later date, namely, in Kitsap county, where a portion of the lands are situated, on November 23, 1894, and in Mason county, where the remainder of the lands are located, on April 15, 1895. The appellee admits that it had

knowledge of the mortgage and the commencement and pendency of the foreclosure suit after the filing of the supersedeas bond on writ of error in the case of Dexter Horton & Co., Bankers, v. W. P. Sayward, on September 26, 1894. What effect did this notice have upon the rights of the appellee? The mortgage in suit was executed February 8, 1878, and was filed for record and recorded in the proper office on February 21, 1878. The appellee commenced its suit against Sayward on June 6, 1892, and had the lands attached on June 8, 1892. Judgment was recovered in the suit July 23, 1894. The lands were levied upon and sold June 26, 1896, the appellee becoming the purchaser at its own sale. The marshal's deed to the property was issued to the appellee, as purchaser, on December 7, 1898. The foreclosure suit had resulted in a judgment February 17, 1896, or more than five months prior to the time the appellee became a purchaser at its own sale of the property. The appellee was not a purchaser for value at its own sale, and acquired no other interest than that possessed by Sayward, the judgment debtor. Hacker v. White, 22 Wash. 415, 60 Pac. 1114, 79 Am. St. Rep. 945. Nor was the appellee a purchaser without notice, since it had constructive notice of the mortgage, and actual notice of the foreclosure suit in 1894. It was therefore bound by the judgment. Sampson v. Ohleyer, 22 Cal. 200, 211; Wise v. Griffith, 78 Cal. 152, 20 Pac. 675. The statute relates to the filing of a notice of the pendency of an action, not to a judgment, and it has no relation to a title acquired after judgment. It has never been the law that a notice was necessary to render a judgment effective as against a party claiming title as a subsequent purchaser. The judgment is a matter of public record, and binds all parties dealing with the property affected by the judgment. Sheridan v. Andrews, 49 N. Y. 478; Black on Judgments, § 550.

But, assuming that the appellee became an incumbrancer at the date of the levy of the attachment on June 8, 1892, and that at that time it had no notice of the foreclosure suit, what effect did this have upon the rights of the mortgagee to the attached property? It is alleged in the bill of complaint that the mortgage was executed on February 8, 1878, and duly acknowledged and certified, under the laws of the then territory of Washington, after its execution, so as to entitle it to be recorded, and was thereafter, to wit, on February 21, 1878, duly recorded in the proper office in the territory of Washington. This allegation is not denied in the answer, and therefore stands admitted. The appellee was therefore charged with notice of the existence of the mortgage, and the mortgagee did not lose the lien of the mortgage by reason of the fact that the appellee was not also charged with notice of the pendency of the foreclosure suit. What the mortgagee did fail to accomplish by the foreclosure suit, in the absence of lis pendens, was the foreclosure of the appellee's equity of redemption acquired by its judgment on July 23, 1894. This result is always recognized in cases where the mortgagor has suffered judgment liens to attach to mortgaged property. A case in point is Stout v. Lye, 103 U. S. 66, 26 L. Ed. 428. In that case Lye, on November 10, 1873, executed a mortgage upon certain real

estate in favor of a bank. The mortgage was recorded on the same day. The bank commenced suit to foreclose the mortgage on January 15, 1876. John W. and Jacob O. Stout brought suit on December 29, 1875, against the mortgagor and his partner, to recover a judgment for a debt. The first day of the next term of the court was January 4, 1876. On January 31, 1876, the Stouts recovered a judgment, and on the same day caused an execution to be issued, which on February 1, 1876, was levied upon the lands covered by the mortgage. The effect of the judgment, under the law of the state of Ohio, where the case arose, was to bind the lands of the debtor for the satisfaction of the judgment from the first day of the term of the court at which it was rendered. This was January 4, 1876, or 11 days before the commencement of the suit to foreclose the mortgage. On February 23, 1876, the holder of the judgment brought suit in the Circuit Court of the United States against the mortgagee to set aside the mortgage as illegal, or, if that could not be done, to have certain alleged payments of usurious interest applied to reduce the debt. The bank answered the suit of the Stouts, setting up the foregoing facts, which being proved by the agreed statement of the parties, the bill was dismissed. From that decree an appeal was taken to the Supreme Court of the United States. One of the questions in the case was the relation of the lien of the judgment, obtained prior to the commencement of the foreclosure suit, to the lien of the prior mortgage in which a judgment of foreclosure was subsequently entered. The court, in discussing this question, said:

"That the suit of the bank was one to foreclose a mortgage and that it was actually pending when the judgment lien of the Stouts was acquired, are conceded facts. When the suit was begun, Lye, the mortgagor, represented the entire equity of redemption. He had parted with no portion of it voluntarily; and if the Stouts had failed to get their judgment during the January term, 1876, of the Circuit Court, no one would claim they were not bound by the decree of foreclosure, although not parties to the suit. Neither could it with any propriety be claimed, we think, that they would not be bound if their lien had only taken effect from the date of their judgment. It is true, the lien followed by operation of law from a judgment in an adversary proceeding against the mortgagor, and was not created directly by his own voluntary act; but it was the legitimate result of his failure to pay a debt he had incurred, and reached only the equity of redemption that was being foreclosed in the pending suit. It was in legal effect no more and no less than an incumbrance of the equity of redemption by the mortgagor under the operation of the judicial proceedings which had been instituted against him to enforce the payment of a debt he owed. As this incumbrance was created pendente lite, there can be no question that it comes within the rule just stated as governing such transfers, unless the rights of the parties are changed because the lien, when created, bound the property, from January 4th, as against other liens and conveyances made by the mortgagor. The inquiry is not as to the extent or validity of the lien, but whether the holder is any less an incumbrancer pendente lite because, although his incumbrance was actually created while the suit was pending, it bound the land, for certain purposes, from an earlier date. Confessedly, the lien of the bank, if its mortgage was valid, was in any event superior to that of the judgment. The only point in controversy is as to the necessity of making such an incumbrancer a party to a pending suit in order to cut off by a foreclosure his interest thus acquired in an equity of redemption. No doubt the Stouts, as soon as their judgment was rendered, had a lien on the mortgaged

property, which for some purposes antedated the foreclosure suit; but until they had secured their lien they, would not have been heard to contest the validity of the bank's mortgage, or the amount that was due on the mortgage debt. If they had been made parties when the suit was begun, they could have done nothing by way of defense to the action until they had acquired some specific interest in the mortgaged property. As creditors at large they were powerless in respect to the foreclosure proceedings, but when they obtained their judgment, not before, they were in a position to contest in all legitimate ways the validity and extent of the superior lien which the bank asserted on the property, in which, by the judgment, they had acquired a specific interest."

It was held, however, that the judgment of foreclosure was a judgment on the merits, and concluded the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Citing Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195. It was accordingly further held that the holder of the judgment was not entitled to maintain his suit to set aside the mortgage, and the decree of the Circuit Court dismissing the bill was affirmed.

In the present suit the appellant, holding the judgment in the foreclosure suit, seeks to foreclose the equity of redemption held by the appellee. This it is clearly entitled to do. The only question to be determined is the sufficiency of the defenses interposed by the appellee. These are: (1) That there was laches, or an abandonment of the foreclosure suit by the complainant therein; (2) that complainant's rights in the foreclosure suit were barred by the statute of limitations; (3) that the appellant was not entitled to amend the prayer of its bill in the present suit.

No hard and fast rule has been laid down by the courts which can be said to govern all cases wherein the defense of laches is invoked. The lapse of time which might induce the application of the doctrine is not a determined period, but depends upon the circumstances of the particular case. One principle pervades all cases involving the defense of laches, however, and that is, that not only must there be a seemingly unnecessary delay on the part of the plaintiff in bringing or prosecuting his action, but that, by reason of some change in the condition or relations of the property or parties occurring during the period of delay, it would be inequitable to permit the claim of the plaintiff to be enforced. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; Halstead v. Grinnan, 152 U. S. 412, 14 Sup. Ct. 641, 38 L. Ed. 495; Wheeling Bridge & T. Co. v. Reymann Brewing Co., 61 U. S. App. 531, 90 Fed. 189, 32 C. C. A. 571. As defined in the case of Demuth v. Bank, 85 Md. 326, 37 Atl. 268, 60 Am. St. Rep. 322:

"Laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. * * * There must be a legal duty to do some act, a failure to do that duty, and attendant circumstances which cause prejudice to an adverse party, before the doctrine of laches can be successfully invoked."

Applying this definition and the principle above stated to the case at bar, what duty has the appellant failed to perform? Wherein has

the delay alleged in the foreclosure proceedings caused any prejudice to the appellee? What change in the condition or relations of the parties to the suit has occurred, during the period of alleged delay, which would now make it inequitable to permit the foreclosure of the mortgage in suit? Was there such a delay in prosecuting the foreclosure proceedings as, under the circumstances, could be deemed abandonment of the appellant's rights? The suit was begun in January, 1882. Appearances were entered, but the first action in response to the complaint of which we have any record was the demurrer of the defendant Meigs Lumber & Shipbuilding Company in April, 1885, more than three years after the complaint was filed. It is admitted that during this period the complainant was not anxious to vigorously prosecute the action, owing to the expressed views of the judge who would then have heard the case upon certain points involved, but the defendants are silent as to the reason for their delay. If they desired to place the burden of delay in prosecution or abandonment of suit upon the complainant, why were they not diligent in the filing of their own pleadings? The answers were not filed until October 4, 1888. The complainant immediately filed motions to strike out certain portions of the answers, and no further delays that could properly be attributed to either party occurred during the course of the suit. Although the case was not at issue until April, 1895, much of the intervening time was required for legitimate postponements, owing to reconstruction of the courts and attendant circumstances beyond the control of the parties to the suit. It was not at any time claimed by the defendants in that suit, so far as appears by the record here, that the complainant was endangering his rights by dilatoriness in prosecution. It was evidently not so regarded by the court, as judgment was rendered in favor of the complainant. In our opinion, the record does not support the contention of the appellee that the appellant should be deemed to have abandoned its rights in the foreclosure suit.

But has the delay which did occur caused any prejudice to the rights of the appellee? Suit was not brought by the appellee to protect its alleged rights until January, 1892. It is not contended that the laches of the appellant, if any existed, was later than this, but, in fact, that it was some years prior in time. How, then, could it have injured the appellee before its rights had attached to the property in question? But if it be said that the appellee's rights by relation date back to the inception of the lien of the appellee's assignor, Sayward, by privity of estate, it is only entitled to such defenses as Sayward may have been entitled to. Sayward did not invoke the defense of laches during the foreclosure proceedings, but contested the suit upon other grounds. Sayward was personally served in that action, appeared, and contested the suit. The decree in that suit is binding upon the mortgagor, the Meigs Lumber & Shipbuilding Company, its grantee, Sayward, and all the parties to the action, as to all defenses which were actually urged or which might have been urged in that suit. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195. Viewed from this standpoint, the appellee is not in position to invoke the defense of laches.

The further defense of the running of the statute of limitations in favor of the appellee in respect to the mortgage cannot be sustained. The judgment obtained in California had the effect of continuing the indebtedness secured by the mortgage. The debt was never barred or extinguished, and, as the mortgage was given to secure the debt, the life of the mortgage was also continued. The life of the mortgage is the life of the debt secured by the mortgage. London & San Francisco Bank v. Bandmann, 120 Cal. 220, 52 Pac. 583, 65 Am. St. Rep. 179; Southern Pacific Company v. Prosser, 122 Cal. 413, 55 Pac. 145; Wilcox v. Gregory, 135 Cal. 217, 67 Pac. 139.

The case of Hanna v. Kasson, 26 Wash. 568, 67 Pac. 271, cited by counsel for appellee, does not, in our opinion, state a different doctrine, as applied to the facts of this case. It appears that in that case a tract of land in the state of Washington was sold and conveyed by the plaintiffs Hanna and his wife in April, 1890, to Thompson, Drum, and Savage, for $18,141, of which sum $1,000 was paid in cash, and a note secured by a mortgage on the land was executed by Savage, payable in two years from date. By agreement of all the parties in interest the deed was made to Savage, who executed the mortgage to the plaintiffs. The note was not paid at maturity, and suit was brought by the plaintiffs against Thompson, Drum, and Savage to recover the amount due on the note, and interest. Judgment was entered in favor of the plaintiffs. An appeal was thereupon taken to the Supreme Court of the state, and a supersedeas bond in the sum of $40,000 filed on the appeal. The only question in controversy in that case arose out of the statement in the complaint concerning the guaranty of the defendants Thompson and Drum for the payment of the debt, and whether upon such statement the complaint stated a cause of action against all the defendants, and the allegations of the answer as to a rescission of the contract, to which answer a demurrer was interposed and overruled on June 13, 1893, and judgment in favor of the plaintiffs was entered upon the pleadings. This judgment was affirmed by the Supreme Court. Hanna v. Savage, 7 Wash. 414, 35 Pac. 127, 36 Pac. 269. The sum of $17,000 was thereupon paid on this judgment by Thompson and the sureties on the supersedeas bond, and on the 28th day of May, 1894, the land involved in the action was sold by the sheriff on execution to satisfy the balance due on the judgment. At the sale the sureties, through trustees, purchased the land for the amount remaining due on the judgment, and on the same day an agreement in writing was made between the trustees of the sureties and the plaintiffs, which was to the effect that the defendants, other than the defendant Kasson, should execute their notes to the plaintiffs for the balance due plaintiffs on the judgment, payable 12 months from the date of sale, and that the sheriff's certificate should be assigned to the plaintiffs to secure the payment of the notes, and, if the notes remained unpaid at maturity, the plaintiffs should take a deed from the sheriff to the premises involved, and should have the option to hold the deed in satisfaction of the balance due, or to hold it as a mortgage to secure the payment of the notes. The notes were given, and the certificate assigned, pursuant to said agreement. In April, 1895, Savage and

his wife conveyed the premises involved to Kasson, in payment of a pre-existing debt. Plaintiffs notified the defendants who executed the notes mentioned that they elected to hold the sheriff's deed as a mortgage. Plaintiffs were placed in possession of the premises, and have ever since remained in possession thereof. After the conveyance to Kasson, plaintiffs commenced an action to foreclose the sheriff's deed delivered to the plaintiffs as a mortgage, and the defendant Kasson was made a party to the foreclosure, under the allegation that she claimed an interest in the premises, and that such interest was inferior to the rights of the plaintiffs. She answered, claiming title under the deed of Savage and wife to herself executed in April, 1895, alleging that at the time the execution sale was made, under the judgment obtained by plaintiffs against Savage, Drum, and Thompson, the property in controversy belonged to the community of Savage and his wife, and that the execution was levied under a judgment which was valid only against the separate property of Savage. Judgment was rendered in favor of the defendant Kasson. On appeal to the Supreme Court, that court, in Hanna v. Reeves, 22 Wash. 6, 60 Pac. 62, reviewed the previous proceedings in the case, and, speaking of the contention of the plaintiffs that they had the right to revive the original mortgage executed for the purchase price by Savage and delivered to plaintiffs, said:

"But plaintiffs abandoned this mortgage. They brought suit upon the note which it was given to secure, and obtained the judgment against the makers of the note, and levied the execution under such judgment upon the property which was included in the original mortgage, and it was sold for a sufficient amount to satisfy the judgment. By agreement between the plaintiffs and the sureties upon the supersedeas bond in the original action, the sureties purchased the premises, and the sheriff returned the satisfaction of the execution and the notes which were executed for the purchase price by the sureties to the plaintiffs. The original mortgage had thus been abandoned. The debt which it was executed to secure had passed through several transmutations, and did not exist in its original form, and in fact was evidenced by entirely new obligations."

The judgment of the lower court was accordingly affirmed.

We now come to the case of Hanna v. Kasson, 26 Wash. 568, 67 Pac. 271. This was an action brought March 9, 1900, to foreclose the original mortgage as against Kasson, the grantee of the community interests of the original mortgagor and his wife. The complaint asked for a decree enforcing the mortgage lien for the balance claimed to be due the plaintiffs, and establishing said lien as prior to any claim of the respondent in the land. In her answer the respondent set up the record in Hanna v. Reeves as a bar to the action, and also pleaded the statute of limitations as a defense. The lower court dismissed the action. On appeal to the Supreme Court, that court held that the record in Hanna v. Reeves was not sufficient to raise the issue of res adjudicata, and with respect to the statute of limitations the court held that there was no longer any right of action upon the note, for that right had been exercised, and that it was not an action upon the judgment. "The entry of the judgment," said the court, "could not have the effect to extend the statute of limitations as to a right of action upon the mortgage, because

it was not a voluntary act upon the part of the debtors in the nature of a contract. The action must therefore be considered as one based alone upon the mortgage as a written contract upon the debt therein described." The court thereupon proceeded to consider whether the statute of limitations had run with respect to the mortgage as a contract upon the debt therein described, and, in this connection, whether the mortgage had been extended by payments that would bind the respondent, as the grantee of the community interests of the mortgagor and his wife. The court found that the payments aggregating $17,000 were paid by Thompson and the sureties on the supersedeas bond. Another small payment was found to have been made by the redemption of a small tract of land from the execution sale. It was determined that these payments did not affect the running of the statute as to the respondent, and concluded that the action was barred by the statute of limitations.

It will be observed that in this case the original debt was extinguished by a judgment that was fully satisfied by payments to the plaintiffs and by an execution sale for the balance due; that the plaintiffs thereupon entered into a second agreement with the original debtors, by which they created a new debt, and under which the plaintiffs received the certificate of the sheriff's sale, and subsequently the sheriff's deed as security for this new debt. The grantee of the mortgagor was not a party to this new debt, although a party to the pending suit. Moreover, the plaintiffs entered into the possession of the property under the sheriff's sale and deed. By these proceedings the original debt was not revived by the judgment, but, on the contrary, the judgment fully discharged and extinguished that debt, leaving nothing but the mortgage contract remaining, and against this contract the statute of limitations had unquestionably run in favor of the respondent when the foreclosure suit was brought. The case at bar presents a very different state of facts. The original debt has never been discharged or extinguished. No execution was ever issued upon any of the judgments obtained in California. Those judgments merely served to vitalize the original debt for successive statutory periods dating from the time of the original acknowledgment or promise, and the supplemental bill of complaint filed in the foreclosure proceeding on January 8, 1894, did not state a new cause of action, but merely informed the court as to the proceedings which had resulted in continuing the debt. There was, therefore, no suspension of the mortgage lien, and no time when the statute of limitations could commence to run in favor of the appellee.

As to the defense urged that, by reason of the merger of the debt evidenced by the notes in the judgments recovered in California, the mortgage security was waived or destroyed, as the law of California did not permit separate actions upon the note and mortgage simultaneously, it is sufficient to say that such law has no extraterritorial effect, and does not apply to the action to foreclose a mortgage upon land in the state of Washington. Moreover, that defense was pleaded in the supplemental answer of Sayward, the grantor of the appellee herein, in the foreclosure suit in the state court. That

suit passed to judgment, and it was there found, as a conclusion of law, that:

"The judgments in the courts of California were not, and did not operate as, an extinguishment, merger, or waiver of the security of the mortgage. The mortgage remains valid and effectual as a security for the debts represented by the notes. The statute of California regarding an action for the collection of a debt secured by a mortgage does not debar or affect an action on the notes and mortgage brought in the courts of said territory before an action on the notes in California, nor does it affect in any way the plaintiff's or the bank's remedial rights in this state."

From this judgment an appeal was taken by the defendants in that case, the Meigs Lumber & Shipbuilding Company and W. P. Sayward, to the Supreme Court of the state, and on motion of counsel for the complainant in that case (the appellant in this case) that appeal was dismissed, and the judgment became final and binding upon the appellee as the grantee of Sayward.

The court below denied to the appellant permission to amend the prayer of its complaint, after the filing of the memorandum of decision, by adding an alternative clause praying for a decree of general foreclosure. This action of the court is assigned as error. An amendment to the prayer was not necessary to obtain the relief sought by the appellant, as, though the specific relief sought was strict foreclosure, the bill also contained a prayer for general relief, and under this prayer a decree for a foreclosure sale is appropriate, if the case presented warrants such relief. Sage v. Central R. R. Co., 99 U. S. 334, 25 L. Ed. 394. The appellee, under the name of Dexter Horton & Co., Bankers, a corporation, holds the legal title to the lands described in the appellant's bill of complaint. This title, as has been stated, was acquired by the appellee by purchase at a judicial sale made June 26, 1896, under a judgment entered in the United States Circuit Court for the District of Washington on July 13, 1894. The lien of this judgment had its origin in an attachment levied January 8, 1892. In this action the appellee, under the name of Dexter Horton & Co., Bankers, was the plaintiff, and W. P. Sayward was a defendant. While this action was in progress in the United States Circuit Court, the appellant's assignor was prosecuting his action in the state court to foreclose his mortgage lien upon the same lands. In that case Dexter Horton & Co., a copartnership, and W. P. Sayward, were defendants. This action resulted in a judgment of foreclosure and sale on February 17, 1896, and at the sale made on August 12, 1896, in pursuance of this judgment, appellant's assignor became the purchaser of the lands. In the present action Dexter Horton & Co., Bankers, a corporation, is made a party defendant, and it is alleged in the bill of complaint that the corporation of Dexter Horton & Co., Bankers, is the successor by assignment of the former partnership of Dexter Horton and Arthur A. Denny, copartners as Dexter Horton & Co., who were made defendants in the former suit. This allegation of the bill of complaint is denied by the answer of Dexter Horton & Co., Bankers, and, although certain transactions are set forth which it is alleged resulted in the judgment obtained by the corporation against Sayward, it is by no means clear that the corporation of Dexter Horton & Co., Bank-

ers, is not the successor in interest in these proceedings of the former firm of Dexter Horton & Co., partners, and by reason of that relation bound by the judgment in the foreclosure suit. But it is not necessary to determine that question. If the appellee, Dexter Horton & Co., Bankers, the corporation, is not standing in the shoes of Dexter Horton & Co., the copartnership, defendants in the foreclosure suit, it is at least standing in the shoes of Sayward, the grantee of the mortgagor, holding a title subject to the lien of the mortgage, but, by reason of the fact that it was not a party to the foreclosure proceedings, an equity remains in the mortgagee to have the proceedings completed by a second foreclosure. 2 Jones on Mortgages, § 1679; Johns v. Wilson, 180 U. S. 440, 450, 21 Sup. Ct. 445, 45 L. Ed. 613.

In California, where the mortgage under consideration was executed, and in the state of Washington, where it is being enforced, the law is that a mortgage does not convey the legal title for any purpose, either before or after condition broken. It is a mere security for the payment of money, and passes no estate in the land. McMillan v. Richards, 9 Cal. 365, 70 Am. Dec. 655; Johnson v. Sherman, 15 Cal. 287, 76 Am. Dec. 481; Goodenow v. Ewer, 16 Cal. 461, 76 Am. Dec. 540; Fogarty v. Sawyer, 17 Cal. 589; Dutton v. Warschauer, 21 Cal. 609, 82 Am. Dec. 765; Dane v. Daniel, 23 Wash. 379, 63 Pac. 268. A foreclosure suit under this law results only in a legal ascertainment of the amount due on the mortgage, and a decree directing the sale of the premises for its satisfaction, the surplus, if any, going to subsequent incumbrancers or the owner of the premises, and execution follows for any deficiency. The appellee obtained a judgment against the grantee of the mortgagor, and has enforced an execution sale of the mortgaged property under the judgment; and, having become a purchaser at the execution sale, it has acquired the right of redemption, which may be extinguished by a second foreclosure and sale of the premises under the present bill. The bill alleges, among other things, in substance, that the interest of the defendant Dexter Horton & Co., Bankers, in the mortgaged property was not, for the reasons therein set forth, bound by the foreclosure judgment, but was at all times subordinate to the mortgage lien, and was acquired with notice of its existence; and the main, if not the sole, object of the bill, is to foreclose that defendant's outstanding equity of redemption. The bill was so framed as to cover that object, and the prayer for general relief embodied in it admitted of that relief being granted. The defendant Dexter Horton & Co. could not, therefore, have been taken by surprise, but had full opportunity to make whatever defense it had to the suit. The relief to which we think the appellant is equitably entitled, and which is here awarded it, is in our opinion not without, but clearly within, the scope of the bill upon which the suit rests.

That part of the decree of the Circuit Court adjudging that the appellant had an equitable lien upon the land described in the bill of complaint for the sum of $11,015.47, the amount of the advances for payment of taxes thereon, with interest to the date of the decree, is affirmed. The remainder of the decree is reversed, with instructions

to enter a decree for the foreclosure and sale of the lands described in the bill of complaint, and providing that the appellee shall have the right of redemption as the successor in interest of the mortgagor.

GILBERT, Circuit Judge (dissenting). I am unable to concur in that portion of the opinion which holds that the trial court erred in not ordering, under the prayer for general relief, that a new sale of the mortgaged premises be had. The rule is well settled that under the prayer for general relief the court may decree only such relief as is conformable to the case made by the bill.

In 1 Daniell's Chancery, 379, the author, referring to the relief that may be decreed under the general prayer, says:

"Yet such relief must be consistent with the case made by the bill; for the court will not suffer a defendant to be taken by surprise, and permit a plaintiff to neglect and pass over the prayer he has made and take another decree, even though it be according to the case made by the bill."

On page 381 the same author says:

"In order to entitle a plaintiff to a decree under a general prayer different from that specifically prayed, the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of establishing a claim for relief, not for the purpose of corroborating the plaintiff's right to the specific relief prayed; otherwise the court would take the defendant by surprise, which is contrary to these principles."

In Jones v. Jones, 3 Atk. 110, the bill was brought to set aside a lease for forgery, and by way of inducement it was alleged that there were fraudulent circumstances attending its execution. The complainant prayed to be relieved only as to the forgery. Lord Chancellor Hardwicke remarked that if the bill had been properly framed as to both points of relief, and had stated clearly, "first, the forgery, and then, if the lease was not forged, yet that it was fraudulent, there, though the plaintiff had not prevailed to set aside the deed for forgery, he might have proceeded on the point of the fraud."

In Palk v. Lord Clinton, 12 Vesey, Jr., 48, where a bill was filed by a mortgagee, praying a sale under a trust to which it appeared he was entitled, he was not permitted, under the general prayer, to take a decree that the defendant might redeem or be foreclosed, although that was the relief which properly belonged to his case.

In Holt v. Rogers, 8 Pet. 420, 434, 8 L. Ed. 995, where the plaintiff had brought a bill for the specific performance of a contract for the sale of land on which he had made a payment, the court denied the specific performance, and, referring to the payment which had been made by the plaintiff, said:

"The bill contains no alternative prayer for the return of £45, if specific performance should not be decreed. And under the circumstances we are of opinion that it ought not to be decreed under this bill upon the prayer for general relief, it not being the case specially made by the bill."

A case in point is Kent v. Lake Superior Land Co., 144 U. S. 75, 12 Sup. Ct. 650, 36 L. Ed. 352. The complainant, a holder of bonds issued under a mortgage, charged a fraudulent conspiracy among the other bondholders, whereby they had fraudulently obtained pos-

session of the mortgaged property by the device of issuing and selling receiver's certificates at a ruinous discount, selling the property on foreclosure, and buying it in and paying for it by receiver's certificates. The specific prayer for relief was that the sale be set aside, and that a portion of the mortgaged property be held subject to the complainant's lien. It was contended by the complainant that under the prayer for general relief he was entitled to invoke the aid of the court to let him in to share in the benefits of the purchase. The court disposed of this contention by saying that such relief would not be conformable to the case made by the bill.

Of similar import are Pennock v. Ela, 41 N. H. 189; Dormer v. Fortescue, 3 Atk. 134, 142; Casady v. Woodbury County, 13 Iowa, 113, 120; Hayward v. National Bank, 96 U. S. 611, 614, 24 L. Ed. 855; Texas v. Hardenberg, 10 Wall. 68, 19 L. Ed. 839; Hobson v. McArthur, 16 Pet. 182, 195, 10 L. Ed. 930; English v. Foxall, 2 Pet. 595, 610, 7 L. Ed. 531.

The case of Sage v. Central Railway Co., 99 U. S. 334, 25 L. Ed. 394, is not in conflict with the decisions above quoted. In that case the mortgage of a railroad company gave to the trustee of the bondholders the option of either strict foreclosure or a sale at public auction. The bill prayed for a strict foreclosure, but under the prayer for general relief the complainants were permitted to obtain a decree directing a foreclosure sale. The Supreme Court approved this substitution of remedies. But the relief so obtained was clearly in accordance with the case made by the bill, for the bill had set forth the terms of the mortgage, showing that the complainant was entitled to the relief which was afforded, and averred affirmatively all the facts upon which that relief was decreed; in other words, it alleged facts showing that the complainant was entitled to elect between two remedies. The trustee had in the bill expressed his choice, but there was no ground for withholding the alternative relief when he applied therefor under the prayer for general relief.

Applying these settled principles to the case which is under consideration, we find that the whole frame and structure of the appellant's bill is one for strict foreclosure. The opinion of the majority of the court find reason for the relief which it is now proposed shall be accorded the appellant, in saying that "the bill alleges, among other things, in substance, that the interest of the defendant Dexter Horton & Co., Bankers, in the mortgaged property, was not, for the reasons therein set forth, bound by the foreclosure judgment." It is true that the bill alleges that the equity of redemption of Dexter Horton & Co. has not been barred by the foreclosure decree and sale, otherwise the appellant would not be in court. But there is nowhere in the bill an allegation or an admission that the rights of Dexter Horton & Co. were not adjudicated by the decree, or that its title in the land was not sold thereunder. On the other hand, the bill sets up the proceedings in the former foreclosure suit, and avers that the rights of Dexter Horton & Co. were determined by the decree therein, and that as to it the mortgage has been foreclosed. It asserts the validity of the decree and the validity of the foreclosure sale made thereunder, and it alleges that Dexter Horton

& Co. pretends that said judgment and sale were as to it ineffectual, and that it pretends that it holds the legal title to the mortgaged premises, and that a new judgment of foreclosure and a new sale must be had in order to duly foreclose the mortgage; all of which, the bill proceeds to allege, is contrary to the facts; and it avers that Dexter Horton & Co. is privy to the mortgagor in respect to the decree, and is barred and estopped thereby. It admits that Dexter Horton & Co. is entitled to its day in court, for the purpose only of having the court fix a time within which it may redeem. So far from asking the court to set aside the former sale, or to order a new sale, the bill specifically denies that any such relief is necessary, and it stoutly asserts that the sale is valid, and that the appellant has thereby acquired the legal title to the mortgaged premises. This was the case which the corporation appellee was called upon to meet, and to which it was required to frame its defense. It has had no opportunity to answer, or to show cause why the relief which is now sought to be obtained under the prayer for general relief should not be granted. It has never been advised by the bill that the appellant is entitled to such relief, or that it would apply therefor. It is conceivable that the defense of Dexter Horton & Co. to a suit to bar its alleged equity of redemption, on the theory that the mortgage has already been foreclosed as to all parties in interest, may be very different from its defense to a new suit of foreclosure brought on the theory that the appellant took nothing by the former sale, and must resort to a new foreclosure in order to bring into the suit the party who held the legal title to the mortgaged property. I submit that, before such relief can be afforded in the present suit, at least the specific prayer for relief must be amended, and the corporation appellee must be afforded an opportunity to meet the case so made.