[No. 8095. Department Two. November 15, 1909.]

FRED W. WOLF COMPANY, *Respondent*, v. NORTHWESTERN DAIRY COMPANY, *Appellant*.[1]

SALES—ACCEPTANCE—TEST TO DETERMINE—PLEADING—ISSUES. In ·an action for the price of an ice making plant sold under a contract providing for a specified test to determine whether the plant was up to the guarantee, and that at such time the plant should be either rejected or accepted, acceptance to be conclusive and a complete dis·charge, an answer denying performance according to the guarantee raises no issue, where its effect is offset by admissions showing the performance of the work, a satisfactory test, and an unqualified ac·ceptance by the defendant.

SAME— WARRANTY—BREACH—EFFECT OF ACCEPTANCE. In such a ·case, a breach of warranty, due to a latent defect not discovered until after the test and acceptance, is no defense or ground for counter·claim, in the absence of fraud.

SAME—PLEADINGS—ANSWER—JUDGMENT ON·PLEADINGS. Where the material allegations of a complaint on contract of sale are admitted ·by the answer, and an alleged breach of warranty set up as a coun·terclaim is defeated by the admitted acceptance of the work pur·suant to a stipulated test whereby the guarantee was to be determ·ined within a time limited, it is proper to enter judgment for the plaintiff on the pleadings, it not appearing that any amendment to ·the answer could be made, or that leave therefor was asked.

[1]Reported in 104 Pac. 1123.

Appeal from a judgment of the superior court for King county, Warren, J., entered November 24, 1908, in favor of the plaintiff, upon the pleadings, in an action on contract. Affirmed.

*Byers & Byers*, for appellant.

*Kerr & McCord* (*L. V. Newcomb*, of counsel), for respondent.

PARKER, J.—This is an appeal from a judgment rendered upon the pleadings in favor of the plaintiff. By the complaint it is alleged, in substance, that on September 23, 1905, defendant entered into a written contract with plaintiff, by the terms of which defendant purchased from plaintiff an ice-making and refrigerating plant, of twenty tons refrigerating capacity, consisting of the machinery and materials specifically detailed and set forth in the contract, which plant was by plaintiff furnished, installed, and completed in all things in accordance with the terms and conditions of the contract, a copy of which is attached to the complaint, by which it appears to have been executed October 6, 1905, and among other things contains the following:

All necessary pipe, fittings and hangers for the direct expansion of ammonia for the proper cooling of the following rooms will be furnished:

| One storage room | 24' x 15' x 9' 6" 32° |
| One ice storage room | 14' x 15' x 9' 6" 28° |
| One ice cream stg. room | 11' x 15' x 9' 6" 14° |

This piping will be placed in the ceiling of the above rooms and will be guaranteed to maintain the temperatures required. . . . .

And we agree that this machine when properly operated and connected to an electric power plant of ample capacity, will have a refrigerating duty equal to the melting of 20 tons of ice during 24 hours of continuous operation at 70 R P M. . . . .,

CAPACITY. We further guarantee that this machine will include an ice-making capacity of 5 tons every 24 hours, besides doing all the necessary work, with a continuous run of 21 hours daily . . .

After the plant is started we will furnish an engineer to have charge of its operation for 10 days, during which time we will do the work and produce the guaranteed results herein specified. While we are in charge you are to furnish all necessary help, together with

fuel, light, water, steam, oil waste and all other necessary supplies for the successful operation of this plant. At the end of the above mentioned 10 days you shall accept or reject the plant, it being understood, however, that if the conditions of this proposition be fulfilled the plant shall be accepted. If rejected, you shall notify us in writing thereof and hereby permit us to enter the premises and remove our equipment without charge to you and upon refunding to you whatever money has been paid us. An acceptance after the above mentioned period shall be in full discharge of all agreements hereinbefore contained.

that on January 11, 1906, the plant having been fully installed and tested for the period of ten days as required by the contract, the defendant accepted the same in writing as follows:

Seattle, Wn., Jan. 11th, 1906.

The Fred W. Wolf Company,
　　　Chicago, Ills.,
Gentlemen:—
　　This is to certify that the twenty ton refrigerating plant, including a five ton ice-making and direct expansion piping for room, has been erected in a proper manner and that the machine is giving every satisfaction. We hereby render this as an acceptance of the contract which was entered into with you on October 6, 1905.
　　　　　　　Yours truly,
　　　　　　　　Northwestern Dairy Company,
　　　　　　　　　(Signed)　per J. C. Burnam.

that the agreed purchase price of the plant was $5,750, payable twenty-five per cent at time of acceptance, twenty-five per cent twenty days after acceptance, twenty-five per cent sixty days after acceptance, and twenty-five per cent ninety days after acceptance; and that defendant has made all payments as they fell due, save the last one falling due ninety days after acceptance, being April 11, 1906, for which judgment is prayed, with interest from that date.

By its answer, defendant denies the allegations of the complaint as to plaintiff's compliance with the terms of the contract, but admits the making of the contract and admits that it executed the written acceptance, and "alleges that said writing was signed under a mistake of fact in this that the defendant supposed that the plant erected by the plaintiff would maintain the temperature warranted by plaintiff and

that the plant would be of the capacity warranted by plaintiff," and that it relied on the warranty in plaintiff's contract. Defendant denies it is indebted to plaintiff in the sum claimed or in any sum. For an affirmative defense, and counterclaim, defendant alleges and prays judgment as follows:

"That at the time the said plaintiff completed the construction of said refrigerating and ice making plant which was in the month of January, 1906, the said plant would maintain the temperatures named and this defendant supposed that the temperatures would be maintained by said plant during the summer months and supposed that the said plant was of the capacity of twenty tons daily and shortly before April 11th, 1906, defendant discovered that said plant was not coming up to the warranty of plaintiff and defendant thereupon refused to make another payment until the plant should be thoroughly tested, but this defendant was not able fully to discover that said plant would not do the work which it was warranted to do and that it was not of the capacity of twenty tons daily until about the month of July, 1906, and thereupon this defendant notified the plaintiff, and the plaintiff by its agent, George L. Clayton, with whom all the deals between plaintiff and defendant were had, and to whom all payments were made, at divers and sundry times during the summer of 1906, and during the year 1907, endeavored to make said plant produce said refrigerating capacity and to maintain the temperatures of said premises as warranted by said plaintiff and the said plaintiff was totally unable to make said plant come up to its warranty, and this defendant has since and during said time given the said plant a thorough test and said plant as constructed by the plaintiff is not of the capacity of twenty tons refrigeration daily and would not and will not maintain the temperatures of said premises during the summer months as warranted by the plaintiff to the great loss and damage of the defendant.

"That by reason of the failure of said plant as erected by the plaintiff to maintain the temperatures of said premises as guaranteed, and by reason of its failure to maintain the refrigerating capacity warranted by plaintiff, this defendant has suffered great loss and damage and has been compelled to hire experts to put the machinery in proper shape and was for two summers deprived of the use of the plant

which it had contracted for and thought had been erected by reason of endeavoring to make the said plant do the work which it had been guaranteed to do by the plaintiff to the loss and damage of the defendant in the sum of three thousand ($3,000).

"Wherefore, this defendant prays that it may go hence without day and recover of and from the plaintiff the sum of fifteen hundred sixty-two and 52-100 ($1,562.52) dollars, together with the costs and disbursements of this action."

Plaintiff moved for judgment upon the pleadings in accordance with the prayer of its complaint, which the court granted, and entered judgment accordingly; from which defendant has appealed to this court.

The principal questions presented are upon the sufficiency of the answer as a defense and counterclaim. (1) Do the denials of the answer, taken in connection with the admissions as to the contract and acceptance, tender any issue? (2) Do the facts affirmatively pleaded, taken in connection with the admissions as to the contract and acceptance, constitute a defense or counterclaim?

Learned counsel for appellant contend, "That the denials of the answer alone were sufficient to preclude any judgment on the pleadings." It is true that the answer in form denies respondent's compliance with the contract, and in form denies that it is indebted to respondent; but the effect of these denials is entirely destroyed by the admitted terms of the contract, the admitted acceptance of the plant and the failure to plead payment. It seems to us the principal announced by this court in Lake v. Steinbach, 5 Wash. 659, 32 Pac. 767, shows that these denials, taken in connection with the admissions, do not tender any issue, and, so far as the denials alone are concerned, leave the material allegations of the complaint unanswered. That was an action to recover the amount due upon a judgment rendered in another state. The allegations of the complaint being in usual form, and sufficient to state a cause for recovery, the answer admitted the facts pleaded, but denied there was any money owing

upon the judgment; and then set up an affirmative defense. Speaking of the effect of such a denial by defendant, the court at page 663, said:

"He controverts the mere conclusion drawn by the pleader from the facts stated, and 'denies that there is any money due and owing to the said plaintiff on any judgment whatever obtained by said plaintiff against said defendant.' This is not such a denial as is contemplated by the statute, and it puts in issue no fact alleged. *Lightner v. Menzel*, 35 Cal. 452; *Nelson v. Murray*, 23 Cal. 338; *Buller v. Sidell*, 43 Fed. Rep. 116; *Watson v. Lemen*, 9 Col. 200 (11 Pac. Rep. 88). The denial of indebtedness is merely a denial of a legal conclusion, and is permissible only in cases where indebtedness is pleaded *as a fact*, without showing how it arose. Boone, Code Pleading, §§ 63, 67. As to all of the material allegations of the complaint in this case, the defendant says he neither denies or admits them. In other words, he does not controvert them. And, not being controverted, the statute declares, in unmistakable language, that they *shall be taken as true*. The facts alleged being true, it follows that the plaintiff was entitled to judgment for want of an answer, unless the allegation in the so called answer, 'that more than six years has elapsed since the cause of said action on said judgment referred to in plaintiff's complaint accrued,' is new matter constituting a defense to the action. *Port v. Parfit*, 4 Wash. 369 (30 Pac. Rep. 328); *King v. Ilwaco, etc., Nav. Co.*, 1 Wash. 127 (23 Pac. Rep. 924)."

See also, *Columbia Nat. Bank v. Western Iron & Steel Co.*, 14 Wash. 162, 44 Pac. 145.

The reason of this rule applies with equal force to appellant's denial of the respondent's compliance with the terms of the contract, after admitting the execution of the unconditional written acceptance of the plant, which was an admission that the contract was complied with. This prevents appellant from putting in issue the performance of the contract by a mere denial that it has been performed. After such an admission of the execution of the written acceptance, he must plead some fact to avoid its legal effect, before it can be said he has tendered an issue thereon. We think no issue was tendered by these denials.

It is next contended in behalf of appellant that the affirmative facts pleaded in the answer are sufficient as a defense and counterclaim. It will be noticed, by the allegations of the complaint and admissions of the answer, that the parties have in express terms provided by their original written contract for the manner and time of making the test of the plant, for the express purpose of determining once for all, the question of whether or not the plant will "*produce the guaranteed results*"; that upon the completion of the ten-day test the plant shall then be accepted or rejected by appellant; if rejected, respondent is to be notified and the plant removed, and if accepted such acceptance "*shall be in full discharge of all agreements hereinbefore contained.*" In compliance with these terms, the plant was tested and thereupon accepted by respondent in the unequivocal words of this written acceptance. These being admitted facts, what is there in the affirmative allegations of this answer to avoid this formal acceptance of the plant having the effect of foreclosing all the rights claimed under such allegations?

It is alleged that the acceptance was signed under a mistake of fact in that appellant supposed that the plant would maintain the temperature and be of the capacity warranted and that he signed the acceptance in reliance upon the warranty. These allegations of the appellant can avail it nothing if, as a matter of fact, the contract and acceptance by their very terms preclude him from raising any such question. It is further alleged, and these seem to be the principal facts relied upon:

"That at the time the said plaintiff completed the construction of said refrigerating and ice-making plant which was in the month of January, 1906, the said plant would maintain the temperatures named and this defendant supposed that the temperatures would be maintained by said plant during the summer months and supposed that the said plant was of the capacity of twenty tons daily and shortly before April 11th, 1906, defendant discovered that said plant was not coming up to the warranty of plaintiff."

Thus is presented the question of whether or not after acceptance of the plant appellant can avail itself of its alleged discovery of the failure of the plant to maintain the stipulated temperature, and its want of capacity, in view of the express provisions of the contract, the test made in compliance therewith, and the acceptance thereafter. Counsel argue that these allegations of the answer show a latent defect, and one which could not be discovered until the warm weather came, and that it was only then it could be fully determined that the guaranteed temperature and capacity of the plant could be at all times maintained. The trouble with this argument is that, as one of the parties to the contract, respondent expressly agreed that the guaranteed results to be accomplished by the plant should be determined by the ten-day test, at the conclusion of which the plant was to be accepted or rejected, and if then accepted the same should be in full discharge of all agreements contained in the contract. It is not alleged that there was any fraud in the making of the test, nor in procuring of the signing of the release, nor any objections on the part of the appellant as to the test being made at the time it was made.

It seems to us the principle involved, and upon which the case of *Green v. Ballard*, 51 Wash. 149, 98 Pac. 95, was decided, is decisive of this question. In that case the city had contracted for the sinking of wells to produce a certain quantity of water daily, for a certain period, and upon a test to be made long before the expiration of the period, showing the capacity, the wells were to be accepted and paid for. After the completion and test, showing the agreed capacity, and before the expiration of the period, the wells failed in capacity, and this being urged as a defense to the contractor's suit for his agreed compensation, this court commented thereon, on page 154, as follows:

"We agree with counsel that the city contracted for the supply agreed upon for the period of fourteen months, and also that the proof fails to show that such supply was in fact furnished for that period. This would preclude a recovery

on the part of the respondent, unless the contract itself provides how the capacity of the well shall be ascertained, and such capacity was ascertained in the manner thus provided. . . . .

"This provision shows clearly that the capacity of the well for the entire period covered by the contract was to be ascertained by test, and that the contractor was to be paid in full for his work long before the expiration of the fourteen months. In other words, it was agreed between the parties that the capacity of the well for all the purposes of the contract should be ascertained by test as soon as the respondent was successful in obtaining a supply of water equal to 1,500,000 gallons per day of 24 hours, and that he should be entitled to the balance due under the contract at that time. We are aware that under this construction of the contract the appellant took chances on the supply holding out for the full period of 14 months, but in our opinion no other construction will give full effect to all the provisions of the contract, which are somewhat conflicting. It follows from what we have said that the test made by the appellant established the capacity of the well within the meaning of the contract, and that test entitled the respondent to the full compensation provided for in the contract."

This is in keeping with the holdings generally to the effect that when the parties have by the terms of their contract agreed that the guaranteed quality or capacity of the thing to be furnished shall be determined in a certain manner, and it is so determined, such determination becomes final. Whether the fact that the guarantee has been fulfilled is, by the terms of the contract, to be determined by test and acceptance based thereon, by silence after an agreed time for inspection, or by any other lawful method, the principle involved is the same. *Staver v. Rogers*, 3 Wash. 603, 28 Pac. 906; *Wasatch Orchard Co. v. Morgan Canning Co.*, 32 Utah 229, 89 Pac. 1009, 12 L. R. A. (N. S.) 540; *Pratt & Co. v. Langston Mercantile Co.*, 111 Mo. App. 96, 85 S. W. 134; *Columbia Rolling Mill Co. v. Beckett Foundry & Mach. Co.*, 55 N. J. L. 391, 26 Atl. 888; *Rowell v. Oleson*, 32 Minn. 288, 20 N. W. 227; *King v. Towsley*, 64 Iowa 75, 19 N. W. 859. We

43—55 WASH

think the answer fails to show facts constituting either a defense or counterclaim.

It is contended that the motion for judgment on the pleadings was an improper method of testing appellant's answer. This practice has heretofore been sanctioned by this court. *Port v. Parfit*, 4 Wash. 369, 30 Pac. 328; *Bethel v. Robinson*, 4 Wash. 446, 30 Pac. 734; *Lake v. Steinbach*, 5 Wash. 659, 32 Pac. 767; *Hanna v. Savage*, 7 Wash. 414, 35 Pac. 127, 36 Pac. 269; *Columbia Nat. Bank v. Western Iron & Steel Co.*, 14 Wash. 162, 44 Pac. 145; *Morris v. Healy Lumber Co.*, 33 Wash. 451, 74 Pac. 662; *Hubenthal v. Spokane & Inland R. Co.*, 43 Wash. 677, 86 Pac. 955. In the case last cited, at page 684, the court said:

"The first question discussed by the appellants is one of practice. It is claimed that the proper way to test the sufficiency of a pleading is by demurrer and not by motion for judgment on the pleadings. As an abstract proposition this is true. The practice of objecting to the introduction of testimony, or moving for judgment on the pleadings, because of some formal defect in the pleadings which may be cured by amendments is not to be commended. But where the motion for judgment goes to the substance of the action or defense and not to the mere form of allegation, there is no reason why the practice should not receive the sanction of the courts. If there is no cause of action or no defense, and no defect curable by amendment, the time of the court should not be taken up in hearing testimony that can avail nothing."

We think enough has been said in our discussion of the admissions and affirmative allegations of this answer to show that the motion for judgment upon the pleadings went to the very substance of appellant's defense and counterclaim. The answer does not appear upon its face to be susceptible of amendment so far as the defense and counterclaim therein attempted to be set up are concerned. We have seen that such defense and counterclaim would be unavailing to appellant, no matter how well it might be pleaded as to form. Neither does it appear by the record that appellant asked or desired to amend.

We conclude that the judgment of the learned trial court should be affirmed. It is so ordered.

RUDKIN, C. J., MOUNT, DUNBAR, and CROW, JJ., concur.