NATHAN W. CONDICT, Respondent, *v.* ONWARD CONSTRUCTION COMPANY, et al., Appellants.

Warranty — contract — effect of express warranty that refrigerating plant, after completion, shall have designated capacity and efficiency — action for balance due for construction of plant — counterclaim for breach of warranty.

In an action to recover an unpaid balance of the contract price for the construction by the plaintiff of a refrigerating plant in an apartment house, the defendant interposed a counterclaim based upon the failure of the plant to fulfill a specific guaranty, or express warranty, contained in the contract, that the plant, after completion in accordance with the specifications and requirements, should have a prescribed capacity and efficiency. The consulting engineer, authorized so to do by the contract, had given to plaintiff a final certificate that the contract had been entirely completed and all defects corrected. Upon the trial the defendants offered evidence tending to show that the plant, at a time subsequent to the engineer's certificate, did not operate with the stipulated efficiency, and that there was a breach of the warranty in that respect. The evidence was objected to by plaintiff, upon the ground that the final certificate was a conclusive determination that the contract had been completely performed and settled every question in dispute. The objection was sustained and the evidence excluded. *Held*, error; that while the certificate was conclusive proof, in the absence of evidence of corruption, fraud or palpable mistake appearing upon its face, that the contract was completely per-

formed, yet the right of the owner to recover damages for the breach of the express warranty survives the delivery and acceptance of the completed plant, and that the defendants were entitled to prove a breach of the warranty and the consequent damages therefrom.

*Condict* v. *Onward Construction Co.*, 148 App. Div. 890, reversed.

(Argued December 2, 1913; decided December 30, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 5, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellants. The court erred to the prejudice of defendants in excluding all evidence offered in support of the counterclaim set up in the answer of the defendant Onward Construction Company. (*Day* v. *Pool*, 52 N. Y. 416; *Briggs* v. *Hilton*, 99 N. Y. 517; *Fairbank Canning Co.* v. *Metzger*, 118 N. Y. 260; *Norwich Light Co.* v. *Ames*, 122 App. Div. 319; *Rochevot* v. *Wolf*, 96 App. Div. 506; *Bates* v. *Fish Bros. Wagon Co.*, 50 App. Div. 38; *Isbell-Porter Co.* v. *Heineman*, 113 App. Div. 79; *Stillwell & Bierce Mfg. Co.* v. *Phelps*, 130 U. S. 520; *Glacius* v. *Black*, 50 N. Y. 145; *Wyckoff* v. *Meyers*, 44·N. Y. 143; *Becker* v. *City of New York*, 170 N. Y. 219.)

*Frederick Hulse* for respondent.

COLLIN, J. The action is to recover an unpaid balance of the contract price for the construction by the plaintiff of a refrigerating plant in an apartment house. The contract was between the defendant, the Onward Construction Company, as the owner, and the plaintiff as the contractor. The defendant Stokes guaranteed the performance of it on the part of the owner. The Appellate Division unanimously affirmed the judgment rendered upon the verdict.

The defendants assert that the trial court erred in

excluding all evidence in proof of the counterclaim alleged by the answer of the defendant company.

The contract contained this provision: "Contractor to guarantee that the plant when properly installed and operated shall have minimum refrigerating capacity, equal to the melting of 65 tons of natural ice per twenty-four hours." The counterclaim which the defendants sought to prove was based upon the failure of the plant to fulfill such stipulation. Inasmuch as the counsel of plaintiff earnestly argues that we are not permitted to review the alleged error because there was not at the trial a ruling with an exception in regard to it, a statement relevant to his assertion must be made.

At the trial there was, within the pleadings, an issue of fact as to the true and correct specifications of the contract. Those alleged genuine by each party were received in evidence. Each, however, contained the guaranteeing clause already quoted and, further, provisions for payments to the contractor as the work progressed and for the final payment upon the certificate of the consulting engineer of the completion of the contract and the correction of all the defects. Another clause was as follows: "It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials." The consulting engineer, designated in accordance with the terms of the contract, issued to the plaintiff his final certificate that the contract had been entirely completed and all defects corrected. During the trial the defendant Stokes was asked in his direct examination as a witness for the defendants a question relating to the operation of the plant at a time subsequent to the issuance of the consulting engineer's final certificate of completion. The question was objected to by plaintiff's

counsel upon the ground that the final certificate was a conclusive determination that the contract had been completely performed and settled every question in dispute. There followed a protracted discussion in the course of which the trial judge asked defendant's counsel: "Do you claim that, outside of any certificate, you are entitled to establish the fact that there was a warranty and that there was a breach of that warranty?" The counsel answered in the affirmative, read to the court the guaranteeing provision we have quoted and stated that it was a part of both specifications and constituted an express warranty which survived the acceptance of the work and that the defendants proposed to show that it was not fulfilled. "The Court: This brings up squarely the conclusiveness of the certificate upon that point." After further argument the trial judge said: "Here is a question asked which is undoubtedly asked for the purpose of showing that there was a breach of the warranty. You [addressing Mr. Kellogg, defendants' counsel] claim you are entitled to establish that breach of warranty after acceptance of the contract and under conditions of this particular case? Mr. Kellogg: Yes. The Court: And my ruling is practically, in effect, that you cannot do it. That is as strongly as I can put it." The exhaustive discussion terminated as follows: "The Court: I have heard both sides, and the ruling I have made applies to the counterclaim. Mr. Kellogg: You are not going to let us go into the counterclaim? The Court: I am not going to let you go into the counterclaim. Defendants except." Obviously the trial judge and plaintiff's counsel knew clearly that the defendants based a counterclaim upon the provision in question, claiming it to be an express warranty of operation and capacity by the plaintiff contractor surviving the completion and acceptance of the plant, and that the question asked was for the purpose of showing that there was a breach of it. A further or other question would not have caused a more correct or certain comprehension

of the claim and intention of the defendants. The court ruled intelligently and erroneously.

The clause of the contract which the defendants invoked upon the trial as the basis of their counterclaim was a specific guaranty or express warranty of the prescribed capacity and efficiency of the plant after completion in accordance with the specifications and requirements of the contract. In *Fairbank Canning Co.* v. *Metzger* (118 N. Y. 260, 265) we adopted as a definition: " A warranty is an express or implied statement of something which a party undertakes shall be a part of a contract, * * * collateral to the express object of it." In the present case the contract contains, in addition to the undertaking to construct and complete the plant, the agreement constituting an express warranty that the completed plant shall have a specified capacity or efficiency.

The final certificate of the consulting engineer was by virtue of the stipulation of the parties (*Matter of Wilkins*, 169 N. Y. 494, 499) conclusive proof in the absence of evidence of corruption, fraud or palpable mistake appearing upon its face, that the contract was completely performed. (*Neidlinger* v. *Onward Construction Co.*, 107 App. Div. 398; affd., 188 N. Y. 572.) Between it and the express warranty there was not hostility. Each secured to the owner its own result, the one that the plant should be constructed and delivered to him in substantial accord with the requirements of the contract with its specifications, the other that it should subsequently operate with the stipulated efficiency. The right of the owner to recover damages for the breach of the express warranty survived the delivery and acceptance of the completed plant. (*Brigg* v. *Hilton*, 99 N. Y. 517; *Isbell-Porter Co.* v. *Heineman*, 113 App. Div. 79; *Norwich Light Co.* v. *Ames*, 122 App. Div. 319.) When the warrantor is the manufacturer the warranty may extend to latent defects growing out of the process of manufacture. (*Henry & Co.* v. *Talcott*, 175 N. Y. 385.) The

defendants were entitled to prove a breach of the warranty invoked by them at the trial and the consequent damages to them.

The judgment should be reversed and a new trial ordered, costs to abide the event.

CULLEN, Ch. J., HISCOCK, CHASE, CUDDEBACK and HOGAN, JJ., concur; MILLER, J., not sitting.

Judgment reversed, etc.