## FRICK CO. v. RUBEL CORPORATION.
### No. 147.

Circuit Court of Appeals, Second Circuit.
Jan. 23, 1933.

See, also, 62 F.(2d) 768; 1 F. Supp. 100.

Jacob A. Freedman, of Brooklyn, N. Y. (Stephen Callaghan, of New York City, of counsel), for appellant.

Wise & Seligsberg, of New York City (Leon Lauterstein and Emanuel Dankowitz, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is a manufacturer of ice-making machinery, which it installs on the buyer's premises. It signed three contracts with the defendant to make and install such machinery, and performed them; the first cause of action was to recover the contract price. The second and third causes of action demand liquidated damages for the defendant's delays in accepting delivery of the apparatus. The only issues on the first cause of action are as to certain breaches of warranty by the seller, upon which the defendant filed a counterclaim. At the end of the case the judge dismissed the counterclaim and directed a verdict for the plaintiff on the first cause of action; both sides moved for a verdict on the second and third, and the judge awarded the damages as liquidated in the contracts. The defendant appealed.

The machinery was made up of many parts, fabricated in the plaintiff's shops, and put together on the defendant's premises, which had to be prepared to receive them; it was not therefore merely the sale of a number of chattels, to be made and delivered complete, and merely to be fixed in place. The work was performed with considerable delay, due to the defendant's failure to have its property ready, and the plaintiff's engineers made a test in April and May, though not at any time at full capacity; this being refused by the defendant. The judge, for reasons which will appear, refused to allow the defendant to prove the breach of the warranties.

There were five. The first was that the machinery under test should perform a duty equal to four hundred tons a day; the second, that the ammonia condenser should have a daily capacity of three hundred and thirty tons; the third, that the freezing system should have a midsummer daily capacity of two hundred and sixty tons; the fourth, that the air agitating system should daily agitate and cool twenty-seven hundred and sixty ice cans; the fifth, that the piping would cool the rooms to specified temperatures. We must assume for argument that none of these were in fact performed, because the defendant was shut off in its proof. The question is whether the breaches were excused by other provisions in the contract, which required the defendant to make claim in season.

Under the heading "Demonstration and Acceptance," it was agreed that the seller's engineer should stay on the job for thirty days "after the machinery is erected and ready to be charged for the purpose of making a demonstration run," and if the machine then performed, the buyer was unconditionally to accept. If the buyer delayed so as to postpone "the trial of the machinery" for over ten days, or if it interfered with the seller's plans or instructions by changes or substitutions without the plaintiff's consent, "the demonstration run shall thereby be deemed to have been waived, and the machinery or plant accepted as a fulfillment of the contract." Under the heading "Remedying Defects," the buyer agreed that "if at the end of the trial period, or such time thereafter as the seller claims to have fulfilled the contract," he failed or refused to accept, he was to notify the seller "in what particular he claims the machinery is defective or deficient and the seller shall then have a reasonable time to remedy the defects or deficiencies." If he could not, he might remove the machinery, and be quit of the contract on repaying whatever he had received. A third clause, "Use of Machinery," provided that "the use of the machinery by buyer for ten days after the expiration of the trial period, or after the seller claims the machinery fulfills the contract, without giving notice of defects as provided for, shall constitute an acceptance of the machinery by buyer as fulfilling the contract."

The judge held that the demonstration run though not at full capacity was "the trial period" referred to in these provisions, and that as the buyer had conceddedly not given any particular notice of any "defects or deficiencies" in the machine for a much longer period than ten days after the run was completed, the cause of action for the breach of any of the warranties was barred. This did not apply to a sixth warranty, not mentioned above, under which the seller was to supply any parts which broke down within a year; but as the defendant failed to prove any breach of this, though not refused the right to do so, we may disregard it. The gist of the first cause of action is the effect of the buyer's failure to give the prescribed notice.

Neither party has argued that the contract was not one of sale, though perhaps it was not. Had it been, the provisions of the Sales of Goods Act would apply to it, under which the buyer loses his right of action for breach of warranty, if he fails to give notice within a reasonable time after he knows or ought to know of the breach (N. Y. Personal Property Law [Consol. Laws, N. Y. c. 41] § 130). The clause, "Use of Machinery," was apt to fix the time within which the buyer ought to learn of the breach, and the reasonable period within which he must give notice. Its meaning can scarcely be doubtful; the use of the machinery is agreed to be an acceptance of it "as fulfilling the contract," which can mean nothing but that it has performed what the seller has engaged that it shall, so far at least as that could be ascertained from the "demonstration run," or "trial period." Of all five warranties, the run was an adequate test, except perhaps the third, which was the midsummer capacity of the plant. The run not being made in midsummer, the buyer insists that a spring test could not disclose such a breach. But it does not appear that it is impossible to learn from a spring test what would be the midsummer capacity. For all we can know, this may be done by a calculation simple for engineers, who may be able readily to make the necessary discount for differences in outside temperature. It is not apparent that the clause quoted was intended to reserve this warranty. Perhaps we should so construe it, if the evidence were that it was impossible when the run was made to test the warranty; but certainly the language prima facie covered all, and if the defendant wished to show that it was unreasonable to extend it to the third, it had the burden of showing why that was true. Therefore, had this been within the Sales of Goods Act (Personal Property Law [Consol. Laws N. Y. c. 41] art. 5, § 182 et seq.), the judge was certainly right.

But the contract was to erect a plant, and thus to perform work and furnish materials, and perhaps was not a contract of sale

at all. In New York before September 1, 1911, when the Sales of Goods Act took effect—at any rate in the case of an express warranty—the buyer in a sale did not have to give notice of a breach of warranty to preserve his remedy. Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51, 52 Am. Rep. 63. Though, of course, the opposite is true now. Sorenson v. Keesey Hosiery Co., 244 N. Y. 73, 154 N. E. 826. The same rule obtained in a contract such as that at bar. Condict v. Onward Construction Co., 210 N. Y. 88, 103 N. E. 886. It may be assumed for argument that where the act does not apply, the old law still governs, and that but for the clause in question the defendant might recover. There was no such clause in Condict v. Onward Construction Co., supra, 210 N. Y. 88, 103 N. E. 886, which is alone enough to distinguish the case; and several decisions have construed similar provisions, uniformly so far as we can find, as having the same effect as the statute in cases of true sales. South Atlantic P. & P. Co. v. York Mfg. Co., 276 F. 509 (C. C. A. 5); Wolf Co. v. Northwestern Dairy Co., 55 Wash. 665, 104 P. 1123; Wolf Co. v. Monarch, etc., Co., 252 Ill. 491, 96 N. E. 1063, 50 L. R. A. (N. S.) 808. In the last two the acceptance was to be "in full discharge of all agreements," a substantially equivalent phrase. The parties might of course contract as they chose; we have only to determine the fair meaning of their words. It seems to us clear that the test was just for the purpose of giving the buyer a chance then to learn whether the warranties had been fulfilled, and that his use of it for ten days without complaint was intended to be a final acceptance exactly as it would be, if the contract were one of sale. Indeed the bare provision for a test has at times been held to have the same meaning. McParlin v. Boynton, 8 Hun (N. Y.) 449, affirmed 71 N. Y. 604; Williston, Contracts, § 716. We think that the counterclaim was properly dismissed.

■ A more troublesome question arises over the second and third causes of action; the item of liquidated damages. The contracts provided that if the buyer was "not ready to receive the apparatus ⸱ ⸱ ⸱ on the date fixed for its shipment" it was to pay one per cent. a month on the whole purchase-price "for handling, moving and storing the same during the term of the delay in shipment." The defendant was not ready to receive the machinery at the stipulated time; and though there was some conflict of evidence as to whether, if it had been ready, the plaintiff could have delivered, since both sides moved for a verdict, we are to take the facts in the plaintiff's favor. Still, the question remains whether the clause was valid. That the losses in handling, moving and storing of the apparatus were not readily ascertainable seems plain. The first two might possibly be computed, though it would be a long and difficult matter, especially as handling and moving might incidentally interfere with the seller's business by calling away its men from other work. Be that as it may, the storage of such bulky machinery certainly might involve losses which could not be readily estimated, if they could be estimated at all. Not only must the apparatus be housed, often after disassembling it, but the space occupied might be necessary for the fabrication or storage of other machinery, and the delays might disrupt the plaintiff's other plans. The proof, and even the offer of proof, did not show that at the time when the contract was made—which is the relevant moment—the clause was not genuinely intended as a liquidation of losses otherwise difficult of appraisal.

■ There remains however the further question whether the judge was in error in refusing to allow the defendant to prove that the liquidated damages were wholly disproportionate to the actual losses suffered by the plaintiff because of the delay. The defendant had gone only a short way on this point in its cross-examination of the plaintiff's superintendent, when it was stopped. It then offered to prove that "the actual loss which was made necessary," "the cost entailed by this alleged delay," was "infinitesimally small as compared with this penalty." The judge refused to allow such proof, and the defendant excepted. It will be observed that the defendant did not offer to prove disparity between the amount fixed as liquidated damages and the losses which were in contemplation when the contract was signed. Unless proof of the actual losses was material to that issue, the offer was of irrelevant evidence, and no question arose whether gross disproportion between liquidated damages and losses in contemplation would be evidence that the clause was penal. That question itself turns on how far some of the language in Sun P. & P. Association v. Moore, 183 U. S. 642, 672–674, 22 S. Ct. 240, 46 L. Ed. 366, is to be read literally, and how far it has been modified by U. S. v. Bethlehem Steel Co., 205 U. S. 105, 121, 27 S. Ct. 450, 51 L. Ed. 731, U. S. v. United Engineering & Const. Co., 234 U. S. 236, 246, 34 S. Ct. 843, 58 L. Ed. 1294, and Wise v. U. S., 249 U. S. 361, 365, 39 S. Ct. 303, 63 L. Ed. 647, and by the decision in Kothe v. R. C. Taylor Trust

Co., 280 U. S. 224, 50 S. Ct. 142, 74 L. Ed. 382.

My brothers think, though I do not, that evidence as to the *actual* loss was not material to the issue of the losses in *contemplation*, though we all agree that it is the comparison of the liquidated damages with the last, not the first, which can raise the point at all. On their view, the offer did not therefore raise the question, and it follows that the judge was right, and that the judgment on the second and third causes of action must also be affirmed.

Judgment affirmed.